## CHARLIE BURNSIDES v. THE STATE.

### No. 3448. Decided April 24, 1907.

#### 1.—Robbery—Personating Officer—Statutes Construed.

Under article 857, Penal Code, there must be a threat to do some illegal act injurious to the character, person or property of the prosecutor by which he is fraudulently induced to part with and deliver something of value to defendant, with intent on his part to appropriate same.

#### 2.—Same—Charge of Court—Illegal Act.

In a prosecution under article 857, Penal Code, the threat must be to do an illegal act, consequently the threat to do a legal act would not come within the offense defined, and a charge that if defendant threatened to put prosecutor in jail and thereby compelled him to pay money to defendant to convict, was error if the evidence showed that defendant had a right to arrest prosecutor and put him in jail, although the subsequent taking of money from prosecutor might constitute another offense.

#### 3.—Same—Arrest in Good Faith—Charge of Court.

Where upon trial for falsely personating an officer, etc., the testimony of defendant's witnesses showed that he claimed he had been specially authorized to make arrest of persons unlawfully riding on railway trains, and that he arrested prosecutor rightfully for this offense, and while taking him to the marshal, prosecutor offered to pay defendant to release him, etc., and there was no suggestion of robbery at the time of the arrest, which defendant made in good faith, the court should have charged the jury that whether defendant was an officer or not, if he acted in good faith to acquit him.

Appeal from the District Court of Parker. Tried below before the Hon J. W. Patterson.

Appeal from a conviction of robbery; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle,* for appellant.—On question of special charge submitting defendant's good faith to make arrest: Hierhalzer v. State, 11 Texas Ct. Rep., 725; Davis v. State, 37 Texas Crim. Rep., 47.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of robbery under article 857, Penal Code, and his punishment assessed at three years confinement in the penitentiary; and prosecutes this appeal. Said

statute provides that if any person by threatening to do some illegal act injurious to the character, person or property of another shall fraudulently induce the person so threatened to deliver to him any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for not less than two years nor more than five years.

The facts from the State's standpoint show that Charlie Burnsides, the appellant, sometime in October, 1906, arrested one Posie Martin at or near the depot in the City of Weatherford, under the following circumstances: Posie Martin, Dalton Hobbs and Bob and Frank Story were down at the depot, and one of the freight trains started out, and appellant stepped up in front of Martin and said, "I have got you, you were trying to steal a ride"; Martin said he was not trying to steal a ride. One of his companions in the meantime caught on to one car and prosecutor Martin caught on to another, and one of his companions Story, so the prosecutor says, tried to catch on and it threw him, and then prosecutor rode a little piece and thought it had killed him, and so he jumped off to see what had become of his companion, and appellant had hold of him before he knew it, and said: "You lied to me, didn't you; you said you were not going to ride a train," and told him he was going to arrest him and put him in jail, and appellant said, "Come on," and gave him a pull, and then remarked, "Didn't you know it was against the law to steal a ride on a train?" to which the prosecuting witness said, "Yes," he knew it was. Appellant then asked him if he knew what the fine is, to which prosecutor replied, "No, sir," and appellant said, "If you will give me $10 I will turn you loose." Prosecutor told him he did not have $10, but had $4.90, and that he would pay him that, which he did, and prosecutor asked him if he was going to turn him loose, and appellant said, "No, come on," and he went on a piece with him and prosecutor said, "If you are not going to turn me aloose I want my money back, I don't want any man packing my money around." Appellant then carried him on down the track and turned him loose and said, "Now, you run and I will shoot you." Prosecutor afterwards went up town to a pool hall; as he got to the door he met appellant, who grabbed him and said, "Come on, we are going down there and see Pink." They went on down a piece and he called Pink and whistled for him; at the east of the depot he came up to where Pink was and said, "I could not find but one of them and that was a boy," and I think he asked who it was, and he and Pink came back directly and said they were going to hunt for the other boys. This witness on cross-examination testified that he and his companions had agreed to go to Fort Worth on any train they could get on; that they did not have a ticket when they got on a freight train. This occurred at night; the prosecuting witness did not see appellant after that night for sometime and recognized him as the party who took from him the money. Prosecutor testified that he gave the money to get loose from

appellant, who threatened to put him in jail; that he threatened to put him in jail for stealing a ride on the train.

J. R. Brown was introduced for the State, and he testified that he was city marshal at Weatherford, and that he did not deputize appellant to act for him; that he did deputize Pink Linehart. Sheriff Bratton also testified that he did not authorize appellant to act for him as deputy in making said arrest.

Appellant's testimony tended to show that he was at the depot that night, and that boys had been riding on the train and stealing rides and that Pink Linehart, who was a policeman, and John Pierce. were down there talking about hearing some boys say they were going to catch a train, and that he asked Pink if he wanted him to help catch them, to which Linehart replied, "Yes." Appellant testified that he saw the prosecutor and two other boys standing as if they were about to jump the train and he accosted them and told them if they tried to jump that train he would catch them, and that he passed on and saw them jump on the train, and as Martin jumped or fell off he caught him and told him that he would take him to the officers, as he was assisting the officers in catching persons jumping the train. Martin asked him to turn him loose and that he would give him (appellant) $5, and appellant·told him he would have to take him to Pink and whatever Pink did, it would be all right. After going up the track a piece Martin insisted on his taking the money, and appellant told him he would take it and turn it over to an officer, and he afterwards went on with appellant trying to find Pink, and Martin in the meantime insisting on being turned loose; appellant finally told him to go to the depot, but that Martin went another way and came up towards town; that he came up and caught him and took him back to Pink at the depot, and told Pink he said he would give $4.90 if he would turn him loose, and Pink said, "Turn him loose and keep the money"; that he took the money and kept it because Pink Linehart told him to take it and let the boy go; that he supposed Pink would make charges against the boy the next day, and he took him to Pink because Pink was the officer whom he was assisting and who had told him to catch the boys. In rebuttal of this testimony, Pink Linehart was introduced by the State, and testified that he was acting as officer on the occasion, that Charlie Burnsides was charged with robbery; he testified that he. did not say anything to appellant about arresting boys that night getting on the train; he further stated that he did not remember appellant bringing anybody to him that night and stating to him that he had caught him ·riding on the train; that appellant came to him and ·told him there was a fellow riding the train; that he went to the party and asked him if he knew it was a violation of the law to ride the train, and he said he did, and he asked him why he did it, and he said he did not know; asked him if he did not know he was liable to have a fine to pay or get in jail, and he said, "Yes," and told him he would let him go this time, but not to let him be caught riding a train again; that he would not take him to jail, and

Vol. 51 Crim.—26.

the party thanked him; that Burnsides, appellant, did not tell him about taking any money from him at that time; that he learned of that about two or three o'clock that night; he also testified that John Pierce was the regular policeman at that time at Weatherford, and that he was now in Tennessee; that he resigned and left there; that he was down to the depot that night, and stated there were some boys fixing to ride the train; that was his business down there; that he saw Charlie Burnsides there; that he and Pierce were talking about catching some boys whom they stated were about to jump on the train; that he was not positive whether Charlie Burnsides asked him if he wanted him to help him catch them if they attempted to get on the train; that it might have been said; he also testified that Charlie Burnsides came to him a little after and reported to him, "here was one of the boys that was riding the train"; that he had been down below the hill there and had come back up to the platform; he asked him where was he at and he said, "right here" and he showed him where he was. This is a sufficient statement of the testimony to present and discuss the assignments of error.

Appellant insists that the facts of this case do not bring it within article 857 defining robbery, and to support his contention he refers us to Davis v. State, 37 Texas Crim. Rep., 48. The indictment charges that appellant falsely pretended to be an officer of the law and unlawfully assaulted and arrested Martin, claiming that said Martin had unlawfully boarded a train in said county, and that he would place said Martin in jail unless he would pay to him money with which to pay a fine for said unlawful act. It occurrs to us that under said statute, as interpreted in Davis v. State, supra, that these allegations in the indictment would make out an offense; that is, a false personation of an officer, and a false charge that Martin was stealing a ride on a train, and the threat to put him in jail. This would be threatening to do an illegal act injurious to the character, person or property of another, and if he thereby induced the prosecutor to deliver to him $4.90, it would constitute the offense. However, it is insisted that the court, in presenting the State's case to the jury, did not embrace all the essential elements of the offense; that is, the court instructed the jury if they believed that appellant arrested Martin, charging him with unlawfully boarding a train, and that while said Martin was so in defendant's custody, he threatened to place him in jail, and if they believed further that such placing said Martin in jail would have been injurious to his character or person, and he thereby fraudulently induced said Martin to pay him $4.90, he would be guilty of the offense of robbery. It will be noticed that the court's charge places the jury's right to convict appellant on the proposition that he threatened to put him in jail, and that if the jury believed that such threat to put him in jail was injurious to Martin's character or person, and he thereby compelled him to pay $4.90, to convict him. It will be observed from reading the statute that the threat must be to do an illegal act, consequently the

threat to do a legal act would not come within the offense defined. It was a part of the State's case, as set out in the indictment, that appellant falsely personated an officer, and that he falsely charged Martin with unlawfully boarding a train. These were allegations made in the indictment, and evidently deemed necessary to make out the State's case. They should have been proved as alleged, and the court's charge should have presented this phase of the case. It is also strenuously insisted that appellant's theory, as based upon the testimony of his witnesses, should have been presented to the jury; that is, appellant claimed that he had been specially authorized by the marshal or policeman to assist him in making arrest of persons unlawfully riding on the train, and that he arrested Martin rightly for this offense, and was taking him to Linehart, the policeman in charge, and who was upon the ground, and that while so holding Martin in custody and carrying him in order to turn him over to Linehart, Martin offered to pay him $4.90, and he told Martin to go where Linehart was and he would catch the other boys, but Martin did not go but went up town. It may be correct that Linehart could not deputize appellant to act independently in making an arrest, but he could summon him to act as one of a posse to aid him Linehart in making arrest. Linehart was upon the ground when the arrest was made, and so far as the testimony advises us, both from the State and defendant, the arrest was made and there was no suggestion of robbery until the proposition to pay to let him go. We take it if the arrest was made by appellant in good faith, believing that he had a right to make it; even though he did not have authority to do it, the subsequent taking of money from Martin on his proposition that he would pay to be released, would not be robbery under this statute. It might be bribery, or it might be the false personation by appellant of an officer; but it would not, in our opinion, constitute the offense as defined by this statute. At any rate, that theory was presented by defendant's evidence, and the court was not authorized to ignore it, but should have presented the matter to the jury either under appellant's requested charge on the subject, or on a charge involving the essential features thereof. We believe that whether appellant was an officer or not, as one of a posse assisting the officer he had a right to make the arrest, as the officer was on the ground and carried Martin immediately to the officer. If what he did in making the arrest and starting with Martin to the officer was in good faith, from appellant's standpoint, and if Martin was stealing a ride, about which there appears to be no question, on the train, appellant was not falsely personating an officer, and he was not making an illegal arrest of Martin, and so far the facts of the case would seem to justify appellant. What he did afterwards would be another matter. Force aside which we do not understand to be involved in the prosecution under this statute, there must be a threat to do some illegal act injurious to the character, person or property of the prosecutor by which he is fraudulently induced to part with and deliver something of value

to appellant, with intent on his part to appropriate same, and unless these elements exist in what was done, there is no offense under this article. If it be conceded that these features were in the case, appellant had a right to have his theory of the evidence fairly submitted to the jury, which was not done.

The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.